# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARSHA K., <br><br> Plaintiff <br><br> v. <br><br> ANDREW SAUL, Commissioner of the Social Security Administration, <br><br> Defendant. | REPORT AND RECOMMENDATION <br><br> 2:17-CV-00453-RJS-CMR <br><br> District Judge Robert J. Shelby <br><br> Magistrate Judge Cecilia M. Romero |

Plaintiff, Marsha K., pursuant to 42 U.S.C. § 405(g), filed this action asking this Court[1] to reverse or remand the final agency decision denying her Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Administrative Law Judge ("ALJ") determined that she did not qualify as disabled within the meaning of the Social Security Act. (ECF 14, Certified Administrative Transcript, (Tr.) 65–91). Having carefully considered the parties' memoranda and the complete record in this matter, the undersigned recommends the Court AFFIRM the Commissioner's decision.

## BACKGROUND

Plaintiff was 36 years old in September 2013, when she claimed disability due to fibromyalgia and anxiety (Tr. 283).[2] She completed the 10th grade and had past relevant work as a label maker, stores laborer, cable re-winder, and food service worker (Tr. 284).

---

[1] This matter is referred to the undersigned in accordance with 28 U.S.C. § 636(b)(1)(B) for a Report and Recommendation on all dispositive matters (ECF 22; ECF 33).

[2] Plaintiff originally alleged disability beginning October 1, 2012, but later amended her alleged onset date to September 10, 2013 (Tr. 249, 360).

1

The ALJ followed the five-step sequential evaluation process for evaluating disability claims (Tr. 68–85). *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found that Plaintiff had a severe impairment (left knee patellofemoral syndrome) but that her impairment did not meet or equal the severity of a listed impairment (Tr. 70–71). The ALJ then found that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with additional limitations (Tr. 72–83). Consistent with a vocational expert's testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy (Tr. 83–85). The ALJ concluded that Plaintiff had failed to establish disability under the Act (Tr. 85).

The Appeals Council then denied Plaintiff's request for review (Tr. 1–6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981; 422.210(a). This appeal followed.

## STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether the record as a whole contains substantial evidence in support of the ALJ's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). While substantial evidence is "more than a mere scintilla," it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). Under this deferential standard, this Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

## ANALYSIS

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled, the SSA employs a five-part sequential evaluation. *See* 20 C.F.R. § 404.1520(a)(4). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See id.* The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other work existing in the national economy. *Id.*

Plaintiff brings numerous claims on appeal, asserting that the ALJ (1) erred in evaluating her headaches, obesity, and intellectual disorder at step two;[3] (2) erred in finding that she did not

---

[3] In her opening brief, Plaintiff alleged that the ALJ also erred in evaluating her anxiety, fibromyalgia, and carpal tunnel syndrome (Pl. Br. 14–17), but later conceded in her reply brief

3

meet listings for her intellectual disorder and headaches at step three; (3) erred in weighing lay and medical source opinions in determining her RFC; and (4) failed to demonstrate that there were a significant number of jobs existing in the national economy at step five (ECF 20, Plaintiff's Opening Brief (Pl. Br.) 9–21).  The Court will address the alleged errors in turn.

I.      **The ALJ Did Not Err at Step Two.**

Plaintiff argues the ALJ erred in failing to adequately consider her headaches, obesity, and intellectual disorder, and the combined effects of these impairments.  (Pl. Br. 9–17).  Step two of the sequential evaluation process requires the ALJ to decide whether the claimant has a severe impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment or combination of impairments qualifies as severe when it significantly limits a person's physical or mental ability to do basic work activities.  *Id.* § 404.1521.  The ALJ reasonably determined that Plaintiff failed to meet her burden to show that her headaches, obesity, and intellectual disorder were severe impairments.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (claimant bears the burden at step two of showing that she has a medically severe impairment or combination of impairments).

   A.   **Headaches**

Plaintiff challenges the ALJ's finding that her headaches were not a medically determinable impairment (Pl. Br. 12–14).  The ALJ noted that Plaintiff's headaches had no known cause and that CT scans, MRI scans, and lumbar punctures had detected only a sinus infection (Tr. 71, 571, 682).  The ALJ also relied on Plaintiff's inconsistent reports of headaches between July 2014 to June 2015 (Tr. 71, 679, 735, 626, 611, 609), and neurologist Dr. Houts who concluded that Plaintiff did not have a recognizable headache disorder (Tr. 561–62).  Based

---

that the evidence relating to these conditions was provided by non-acceptable medical sources.  Because Plaintiff provided no additional analysis other than this concession, the court declines to consider these arguments further.

on this record, the ALJ reasonably concluded that Plaintiff's headaches did not meet the definition of a medically determinable impairment. *See* 20 C.F.R. § 404.1529(b).

B.  **Obesity**

Plaintiff also argues that the ALJ erred in finding that her obesity was not a severe impairment and in failing to evaluate her obesity under SSR 02-01p (Pl. Br. 15–16). An ALJ must consider "the combined effects of obesity with other impairments" and "evaluate each case based on the information in the case record." SSR 02-1p, 2002 WL 34686281, at *1, 6. Here, there was no evidence in the record that supported imposing additional restrictions due to Plaintiff's obesity beyond the limitations the ALJ already imposed through sedentary work, the least physically demanding form of work (Tr. 72). The ALJ also reasonably relied on Dr. Ingebretsen who did not opine that she had any physical limitations as a result of her weight, instead noting that her gait was normal, she retained normal muscle strength, and she was able to "squat to about 100% of normal" (Tr. 431). The ALJ noted that Plaintiff's other physical examinations also showed that she retained normal range of motion, gait, and strength (Tr. 71, 436–37, 543–44, 735–37). The ALJ reasonably concluded that Plaintiff failed to meet her burden to show that her obesity was a severe impairment requiring additional limitations. *See* 20 C.F.R. § 404.1512(a).

C.  **Intellectual Disorder**

Finally, Plaintiff argues that the ALJ erred in failing to specifically address whether her intellectual disorder was a severe impairment at step two (Pl. Br. 9–10). However, if the ALJ finds *any* impairment severe at step two, the inquiry continues. *See* 20 C.F.R. § 404.1520(a)(4). Subsequently, in determining the RFC, the ALJ considers all medically determinable impairments, including non-severe impairments. *Id.* § 404.1545(a)(2). Because the ALJ

5

considers both severe and non-severe impairments at later steps, any failure to designate additional severe impairments at step two qualifies as harmless if the ALJ finds at least one severe impairment and continues with the sequential evaluation process. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

Here, the ALJ found at step two of the sequential evaluation process that Plaintiff had a severe impairment consisting of "left knee patellofemoral syndrome" (Tr. 70). Having found that Plaintiff possessed this severe impairment, the ALJ continued with the sequential evaluation process (Tr. 70–85). In determining Plaintiff's RFC, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 404.1529 and SSR 96–4p" as well as "opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRS 96-2p, 96-5p, 96-6p and 06-3p" (Tr. 72). Specifically, the ALJ considered the testimony of Plaintiff; the psychological evaluation by Dr. Barnett, the intellectual functioning evaluation by Dr. Kotter, the physical evaluation by Dr. Ingebretsen; Plaintiff's emergency room visits, surgeries, and primary care treatment; the lay opinion of Plaintiff's mother; and the medical opinions of four state agency physicians Drs, Taggart, Terry, Huebner, and Berkowitz (Tr. 72–83). Because the ALJ found a severe impairment at step two and continued the sequential evaluation process, any error at step two remains harmless.

## II.     The ALJ Did Not Err at Step Three.

Plaintiff contends that the ALJ erred at step three of the sequential evaluation process by failing to discuss her intellectual disorder and whether it qualifies as an impairment that met Listing 12.02 and 12.05 (Pl. Br. 9–10). Step three of the sequential evaluation process "asks whether any 'medically severe impairment,' alone or in combination with other impairments,"

6

meets or equals "any of a number of listed impairments so severe as to preclude 'substantial gainful employment.'" *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

    **A.    Listing 12.02**

To satisfy Listing 12.02 (organic mental disorders), a claimant must first provide medical evidence to "demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02 (2016). The listing is met when a claimant satisfies both subsection A, which requires a claimant to show "[m]edically documented persistence of at least one" of a list of conditions or symptoms, and subsection B, which requires a claimant to show "[m]arked impairment[s]" or "[m]arked difficulties" in at least two of four specified areas. *Id.* § 12.02A, B.

Here, Plaintiff failed to demonstrate that she had an "organic factor judged to be etiologically related to the abnormal mental state," such as a traumatic brain injury. *Id.* at § 12.02. Because Plaintiff presented no medical records demonstrating the presence of an organic factor, she presumptively fails to meet listing 12.02. *See Porter v. Colvin*, 525 F. App'x 760, 762 (10th Cir. 2013) (noting that the plaintiff failed to prove an "organic factor" as required by the listing). Further, Drs. Huebner and Berkowitz, reviewing psychologists with expertise in the Social Security listings, specifically found that Plaintiff's impairments did not meet the criteria of the mental health listings (Tr. 132–33, 145–46). Therefore, Plaintiff failed to show that her impairment was severe enough to satisfy a mental health listing such as listing 12.02.

    **B.    Listing 12.05**

Listing 12.05 contains an introductory paragraph, or a "capsule definition," with criteria the claimant must meet in addition to meeting one of the "four severity prongs" for intellectual

7

disability. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A). Meeting the introductory paragraph's diagnostic description for intellectual disability is a prerequisite to consideration of paragraphs A through D, the "severity prongs," of listing 12.05. *See id.* The diagnostic description of 12.05 requires a showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period [i.e., onset before age 22]." 20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.05. Here, the record showed that Plaintiff was able to work for many years at a variety of different jobs (Tr. 284), and perform a wide range of daily activities, including caring for children, pets, and her own personal needs, preparing meals, going shopping for groceries, and paying her bills (Tr. 289–94, 426, 431). Examining psychologist Dr. Barnett estimated that Plaintiff's intellectual functioning was in the normal range (Tr. 427). Plaintiff thus failed to demonstrate that she had the requisite deficits in adaptive functioning to meet the capsule definition of listing 12.05. *See Bland v. Astrue*, 432 F. App'x 719, 723 (10th Cir. 2011).

The Court is not persuaded by Plaintiff's remaining arguments. First, the Court finds Plaintiff's reliance on Dr. Kotter's examination unpersuasive. Dr. Kotter diagnosed Plaintiff with borderline intellectual functioning, not mental retardation or intellectual disability (Tr. 657). Second, the Court finds Plaintiff's reliance on the agency's Program Operations Manual System (POMS) unpersuasive. POMS is used as an equivalence tool only when "the capsule definition of [the] impairment is satisfied." *See* POMS DI 24515.056(B)(1). Because Plaintiff failed to show that she meets the capsule definition for listing 12.05, she failed to meet her burden to show that she met or equaled listing 12.05. Finally, the Court rejects Plaintiff's argument that remand is warranted because the ALJ did not specifically discuss listing 12.02 or 12.05 (Pl. Br. 9–12). The ALJ was not required to discuss these listings because Plaintiff did not meet her burden to

show that she met even the threshold showings for these listings. Nonetheless, the ALJ's step three discussion was sufficient for judicial review given that the ALJ elsewhere discussed evidence supporting a finding that Plaintiff did not meet listing 12.02 or 12.05 (Tr. 72–83). *See Fischer-Ross*, 431 F.3d at 733. The Court therefore upholds the ALJ's step three determination.

### III. The ALJ Did Not Err in the RFC Determination.

A claimant's residual functional capacity ("RFC") reflects the ability to do physical, mental, and other work activities on a sustained basis despite limitations from the claimant's impairments. 20 C.F.R. § 404.1545. In determining the claimant's RFC, the decision maker considers all of the claimant's medically determinable impairments, including those considered not "severe." *Id.* § 404.1545(a)(2).

Plaintiff complains that the ALJ did not properly evaluate a lay witness opinion from her mother and the opinion from examining psychologist Dr. Kotter in determining Plaintiff's RFC (Pl. Br. 17–18). Plaintiff argues that the ALJ gave insufficient reasons for giving less weight to a Function Report completed by her mother (Pl. Br. 17). The Court finds Plaintiff's reliance on the Ninth Circuit standard for evaluating lay witness testimony to be unavailing as it differs from the Tenth Circuit standard (*id.* (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2011)). In the Tenth Circuit, the ALJ "is not required to make specific written findings of credibility [of lay witness testimony] . . . if the written decision reflects that the ALJ considered the testimony." *See Blea v. Barnhart*, 466 F.3d 903, 914 (10th Cir. 2006). Here, the ALJ considered Plaintiff's mother's statement (Tr. 289–97), but concluded that it was entitled to little weight because it "provide[d] very little information and no specific limitations" (Tr. 82). The Court finds that the ALJ's consideration of this evidence meets the standards of this circuit.

9

Plaintiff also complains that the ALJ did not assign a specific weight to Dr. Kotter's opinion or include limitations to Plaintiff's RFC based on his opinions (Pl. Br. 17–18). An ALJ must evaluate every medical opinion. 20 C.F.R. § 404.1527(c). However, the failure to assign a weight to a medical opinion will not result in remand unless Plaintiff demonstrates that it affected the ultimate outcome of her case. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (citations omitted)).

Here, the Court finds that the ALJ adequately considered Dr. Kotter's opinions. The ALJ discussed the results of Dr. Kotter's evaluation, including Plaintiff's full-scale IQ score of 75 and noted that Dr. Kotter was not certain was an entirely valid result based on the discrepancies in Plaintiff's index scores. The ALJ also discussed Dr. Kotter's opinions that Plaintiff might "struggle to comprehend most of what is said unless given time to process the information," that Plaintiff's learning might be improved with visual aids, and that she "might have difficulty recalling instructions and task directions unless they were specific, simple, and given slowly," but that she could process instructions as well as others her age (Tr. 74–75, 654–57).

The Court further finds that assigning a specific weight to Dr. Kotter's opinion would not have affected the outcome of the case. As discussed above, the ALJ's RFC assessment was consistent with the medical source opinions, including the opinions of the reviewing and examining physicians and psychologists (Tr. 132–33, 145–46, 429, 432). Meanwhile, Dr. Kotter's opinion did not provide specific functional limitations that would have assisted the ALJ in assessing Plaintiff's RFC. *See Bales v. Colvin*, 576 F. App'x 792, 797 (10th Cir. 2014). The ALJ's failure to assign a weight to Dr. Kotter's opinion was therefore harmless. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162–63 (10th Cir. 2009) (rejecting plaintiff's argument that

an ALJ erred by failing to specifically state what weight he assigned to a doctor's report).

## IV. The ALJ Did Not Err at Step Five.

### A. Hypothetical

Plaintiff argues that because the ALJ's RFC assessment failed to include any mental limitations, the resulting hypothetical to the vocational expert (VE) and step five findings were erroneous (Pl. Br. 18–21). Specifically, Plaintiff asserts that two of the jobs identified by the VE and relied on by the ALJ (touch up screener and addresser) conflicted with a limitation to simple work because the Dictionary of Occupational Titles (DOT) describes these jobs has having a General Educational Development (GED) reasoning level of two (Pl. Br. 19–51). However, these occupations have a specific vocational preparation (SVP) level of two, which corresponds with unskilled work. *See* SSR 00–4p, 2000 WL 1898704, at *3; *Touch up screener*, DOT # 26.684-110, 1991 WL 679616; *Addresser*, DOT # 209.587-010, 1991 WL 671797.

The Tenth Circuit has recognized that a limitation to "simple and routine work tasks" is consistent with the demands of level-two reasoning. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding a limitation to "simple and routine work tasks" was inconsistent with the demands of DOT level-three reasoning but consistent with the demands of DOT level-two reasoning). As explained above, Plaintiff's alleged mental limitations were not supported by the record, but even if Dr. Kotter's opinion could be read to support a limitation to simple work, all of the jobs relied upon by the ALJ at step five were unskilled jobs that were consistent with Dr. Kotter's opinion (Tr. 84). Thus, the failure to specifically include mental limitations in the hypothetical was harmless.

Plaintiff also challenges the VE's hypothetical for failure to include additional physical limitations such as squatting and leg elevation due to pain, edema, and blood clots (Pl. Br. 20). When a hypothetical question includes "all (and only) those impairments borne out by the

11

evidentiary record," *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995), a VE's testimony in response provides substantial evidence to support an ALJ's finding concerning work an individual is able to perform, *see Decker v. Chater*, 86 F.3d 953 (10th Cir. 2014). Here, the VE's hypothetical adequately included Plaintiff's limitations that are supported in the record when it is considered in its entirety and identified jobs involving sedentary work that Plaintiff could perform even with the additional physical limitations that she alleged. *See Lane v. Colvin*, 643 F. App'x 766, 770 (10th Cir. 2016) (finding an ALJ's error in not incorporating all the doctor's limitations into the RFC finding harmless where the VE identified jobs a person with those additional limitations could perform).

### B. Jobs in the National Economy

Plaintiff argues the ALJ erred at step five of the sequential evaluation process by finding she was not disabled because she could perform other work existing in significant numbers in the national economy (Pl. Br. 20–21). Once the claimant demonstrates that her impairments prevent her from engaging in past relevant work, the burden shifts at step five to the Commissioner to demonstrate "that the claimant retains the . . . (RFC) to do other work that exists in the national economy." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The ALJ determines whether the claimant can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ may determine that a sufficient number of jobs exist by relying on the testimony of a vocational expert (VE). *Id.* § 404.1566(e).

"Identified jobs must be shown to exist in 'significant numbers' in the regional or national economies." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). In *Trimiar v. Sullivan*, the Court refused to draw a bright line as to what number of jobs constitutes a "significant number" and ruled that "each case should be evaluated

12

on its individual merits." *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). The Court noted several factors relevant to a proper evaluation of what amounts to "significant" numbers: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Id.* (citations and quotation marks omitted). The analysis in *Trimiar* makes clear that an ALJ need not explicitly discuss those factors—rather, the record must reflect that these factors entered into the ALJ's calculus in determining whether jobs existed in significant numbers. *See id.* at 1331–32.

Here, the VE testified that 3,000, 40,000, and 9,000 jobs existed in the national economy for final assembler, touch up screener, and addresser, respectively (Tr. 84). The VE's testimony thus established that there would be approximately 52,000 jobs available in the national economy that an individual with Plaintiff's RFC would be able to perform. Review of the ALJ's decision reveals that he considered the level of Plaintiff's disability, the reliability of the VE's testimony, and the types and availability of such work (*id.*). This is sufficient under *Trimiar*. The Commissioner has therefore met his burden at step five to show that there were jobs existing in significant numbers that Plaintiff could perform. *See* 20 C.F.R. § 404.1566(a). Thus, the ALJ was entitled to rely on the VE's testimony, which provided substantial evidence in support of the ALJ's finding at step five.

## RECOMMENDATION

Based on the foregoing, the undersigned finds the ALJ's decision is supported by substantial evidence and the correct legal standards were applied. Thus, the undersigned recommends the Commissioner's decision be AFFIRMED.

## NOTICE

Copies of this Report and Recommendation are being mailed to all parties who are hereby notified of their right to object. The parties must file any objection to this Report and Recommendation within fourteen (14) days of service. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 3 September 2019.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah